NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-201

COMMONWEALTH

vs.

DONALD WILLIAMS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Donald Williams, appeals from an order denying his motion for a new trial.  The defendant asserts that the motion judge erred in concluding that (1) the conditions on court room entry did not amount to a closure of the court room, and thus did not constitute a structural error; (2) the trial judge properly determined that the defendant had not established a prima facie case of discrimination in the prosecution's use of peremptory challenges; and (3) "newly available evidence" submitted by the defendant did not warrant a new trial.  For the reasons herein, we affirm.

1.  Background.  On December 18, 2008, the defendant was indicted for assault and battery by means of a dangerous weapon

causing serious bodily injury, in violation of G. L. c. 265, § 15A (c) (i); armed assault with intent to murder, in violation of G. L. c. 265, § 18 (b); unlawful possession of ammunition, in violation of G. L. c. 269, § 10 (h) (1); carrying a firearm without a license (second offense), in violation of G. L. c. 269, § 10 (a) & (d); and unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (n). Trial commenced on April 1, 2011.

a. Conditions of court room entry. On the first day of trial, the prosecutor requested that a court officer be placed outside the court room to check entrants' identification, and to sign in entrants as they entered the court room, citing concerns about witness intimidation. Defense counsel objected on grounds that such conditions would violate the defendant's right to a public trial, and furthermore, that the conditions might lead to the defendant's family members being excluded from the court room if they could not produce identification. After considering defense counsel's objection, the trial judge granted the Commonwealth's request, noting,

> "Based on the history of this case, based on what I find to be egregious witness intimidation, I'm going to grant the Commonwealth's request. The defendant has made affirmative steps to reach out to people on the other side to intimidate witnesses, and I'm not going to have that in my courtroom.

> "To the extent that there's a family member or someone who doesn't have a picture ID, I'd ask that defense counsel

2

personally identify that person to the court officer . . . "And then we'll allow them in. . . . If the court is open, and if you're saying this issue regarding the possession of [a] picture ID is a problem, I'll address it and people will be allowed in with the representation by defense counsel that this person is who this person is."

b. Jury selection. During jury empanelment, the prosecutor used a peremptory challenge on juror 196. Defense counsel objected on the grounds that juror 196 was "the second Black female the Commonwealth ha[d] challenged." The following exchange ensued:

THE JUDGE: "I don't find any pattern that would raise a concern. There have been other African-Americans or people of color selected to be on the jury."

DEFENSE COUNSEL: "I don't think that the test is whether or not there are other black jurors that were seated . . . it's whether the Commonwealth's challenges in and of themselves are race-based."

THE JUDGE: "I'm aware of the legal standard . . . and I know that one person can be a pattern, but I don't detect any pattern whatsoever. The last juror that was chosen was a black female. I don't find there to be any pattern."

DEFENSE COUNSEL: "Just note my objection."

c. Trial, conviction, and postconviction motions. At trial, the Commonwealth offered evidence to show that the defendant shot T.S., a fellow member of the gang to which the defendant belonged. The Commonwealth presented T.S.'s testimony recounting the events leading up to the shooting, the shooting itself (where T.S. identified the defendant as the shooter),and the events after the shooting where T.S. once again identified

3

the defendant as the shooter.  The defendant, in turn, offered evidence that undermined T.S.'s testimony regarding the events that occurred before the shooting.

Ultimately, the jury convicted the defendant on all counts.[1] The defendant appealed from his convictions, whereupon a panel of this court affirmed the judgments in Commonwealth v. Williams, 84 Mass. App. Ct. 1135 (2014).  Further appellate review was subsequently denied, 468 Mass. 1102 (2014).

In February of 2023, the defendant filed a motion for a new trial wherein he argued, for the first time, that structural error arose from the prosecution's peremptory challenges, and from the judge's conditions on court room entry.  After a nonevidentiary hearing, a Superior Court judge denied the defendant's motion for a new trial.  The defendant appeals.

2.  Discussion.  a. Standard of review.  Pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), a judge may grant a new trial "if it appears that justice may not have been done."  We review the denial of a motion for a new trial to determine whether there has been a significant error of law or other abuse of discretion.  Commonwealth v. Benson, 453 Mass. 90, 99 (2009).  "Where, as here, the motion judge was not the

_____

[1] The unlawful possession of ammunition charge as well as the subsequent offense portion of the forth charge were dismissed following trial at the request of the Commonwealth.

4

trial judge and the motion judge did not make credibility determinations arising from an evidentiary hearing, we consider ourselves in as good a position as the motion judge to review the trial record" (citation omitted). Commonwealth v. Vaughn, 471 Mass. 398, 404 (2015). "Motions for a new trial are granted only in extraordinary circumstances." Commonwealth v. Comita, 441 Mass. 86, 93 (2004).

b. Peremptory challenge. "The use of peremptory challenges to exclude potential jurors solely because of their race is prohibited by the equal protection clause of the Fourteenth Amendment to the United States Constitution." Commonwealth v. Grier, 490 Mass. 455, 458 (2022), citing Batson v. Kentucky, 476 U.S. 79, 89 (1986). "Article 12 of the Massachusetts Declaration of Rights similarly proscribes the 'use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.'" Grier, supra, quoting Commonwealth v. Soares, 377 Mass. 461, 486 (1979).

When a party challenges the constitutionality of a peremptory strike, they "must rebut the presumption that the strike is constitutionally proper by making out a prima facie case that the purpose for the strike is discriminatory." Grier, 490 Mass. at 458. "If the judge finds that a prima facie case of discrimination has been established, the burden shifts to the

5

party seeking to exercise the peremptory strike to provide a group-neutral explanation for the challenged strike."  Id.

Here, defense counsel objected to the prosecutor's use of a peremptory challenge to strike juror 196, a Black woman. Defense counsel argued that the Commonwealth had also struck juror 138, a Black woman, making juror 196 the second Black woman for which the Commonwealth had used a peremptory challenge.  In response to the objection, the trial judge stated that he found no "pattern" of discrimination and did not require the prosecutor to state a non-discriminatory reason for the challenge.  We review the trial judge's determination for abuse of discretion, and when doing so, "we do not ask 'whether the judge was permitted to find that the presumption [of constitutional propriety] had been rebutted,' but rather 'whether [the judge] was required to have so found'" (emphasis omitted).  Grier, 490 Mass. at 459, quoting Commonwealth v. Issa, 466 Mass. 1, 10 (2013).

In assessing whether a party has established a prima facie case for discrimination, the judge should consider "the totality of relevant facts," guided by the following factors:

"(1) the number and percentage of group members who have been excluded; (2) the possibility of an objective group-neutral explanation for the strike or strikes; (3) any similarities between excluded jurors and those, not members of the allegedly targeted group, who have been struck; (4) differences among the various members of the allegedly targeted group who were struck; (5) whether those excluded

6

are members of the same protected group as the defendant or the victim; and (6) the composition of the jurors already seated" (citation omitted).

Grier, supra.

In light of the factors above, and on this record, we discern no error or other abuse of discretion in the trial judge's determination. First, given the incomplete information available about the demographics of the jury pool, we cannot determine whether a disproportionate number or percentage of Black, female jurors was excluded from the jury. See Grier, 490 Mass. at 460 (record was insufficient to support whether strikes disproportionately targeted Black jurors).

Second, viewing the prosecution's strikes in the context of the entire empanelment, an objective, group-neutral explanation emerges: concern regarding the potential jurors' impartiality given that they had close relatives who were recently prosecuted. Juror 138 disclosed that, a year prior, her son had been prosecuted and convicted in the same court house. Similarly, juror 196 revealed that her brother had recently been charged and convicted by the Suffolk County District Attorney's office, the same office prosecuting the defendant, and that he had been incarcerated for "half his life."

Third, the record reveals no similarities between jurors 138 and 196, and the other two potential jurors struck by the prosecutor. Fourth, we discern no differences between jurors

7

138 and 196 relevant to our analysis. Fifth, jurors 138 and 196, who are Black women, are of the same protected racial group as the defendant and T.S., who are Black men. However, where "the defendant shares the group membership of the jurors whose exclusion is challenged as discriminatory, and the victim was also a member of the protected group . . . this factor 'does little to tip the balance in either direction.'" Grier, 490 Mass. at 462, quoting Commonwealth v. Jones, 477 Mass. 307, 322 n.27 (2017).

Lastly, regarding the composition of the members of the jury already seated, the trial judge noted that there were other people of color on the jury, and that the last juror seated was a Black female. Although this factor cannot be the sole basis for the judge's determination, see Commonwealth v. Sanchez, 485 Mass. 491, 512 & n.16 (2020), it is nonetheless relevant to the "totality of the relevant facts" considered by the judge, Grier, 490 Mass. at 459.

Thus, based on the above factors, we conclude that the trial judge did not abuse his discretion in determining that defense counsel had failed to raise a prima facie case for discrimination.[2]

---

[2] The defendant also asserts ineffective assistance of appellate counsel for failing to raise the issue of the Commonwealth's peremptory challenges. Given our conclusion here, it follows that the defendant's appellate counsel did not

8

c. <u>Conditions on entry to court room</u>. Next, the defendant asserts that the motion judge erred in concluding that the conditions imposed by the trial judge on court room entry did not amount to constitutional court room closure. In <u>Commonwealth</u> v. <u>Maldonado</u>, 466 Mass. 742, 751 (2014), the Supreme Judicial Court held, in factual circumstances similar to those at issue here, that a trial judge's order requiring spectators to show identification and sign in before entering court was not a constitutional closure. In so holding, the court provided a framework for analyzing the propriety of such conditions, stating,

> "Although we conclude that the conditions imposed by the judge of signing in and showing identification fell short of a constitutional closure, that does not mean that they may be imposed without justification or that they are exempt from judicial review. . . . [I]dentification may be required of spectators only where a judge sets forth on the record the reasons that justify imposing this condition on entry based on the special circumstances of the case and only where the conditions are no broader than needed to accomplish their purpose."

<u>Id</u>. at 751-752.

Here, the trial judge explicitly set forth his justification for imposing the conditions on the record, stating he had found "egregious witness intimidation," and that the

---

"fail[] to raise a significant and obvious issue . . . which . . . may have resulted in a reversal of the conviction, or an order for a new trial" (citation omitted). <u>Commonwealth</u> v. <u>Sowell</u>, 34 Mass. App. Ct. 229, 232 (1993).

9

defendant had taken "affirmative steps . . . to intimidate witnesses." Given the trial judge's concerns and the gang-related nature of the crime, we conclude that he acted within his discretion to require entrants to show identification and sign in. See Maldonado, 466 Mass. at 752 ("A judge may recognize that, when a member of a gang is alleged to have committed a shooting, there is a risk that others associated with the gang may attempt to intimidate witnesses to cause them to exculpate, or at least avoid incriminating, the accused"). Moreover, where there had already been attempts to intimidate witnesses, the trial judge acted within his discretion in imposing the conditions despite defense counsel's statement that "anyone that the Commonwealth was worried about . . . [was] in custody." See id. at 753 ("A judge need not wait for a witness to be intimidated, the court room to be disrupted, or a specific threat before taking appropriate steps to address the risk of such misconduct").

The defendant attempts to distinguish this case from Maldonado, arguing that the alleged presence of a Boston police officer, in addition to court officers, at the door of the court room shows that the conditions had an "investigative purpose" -- namely, that the police must have been comparing names of entrants against a list and set of photographs to "screen" their connections to the defendant. In support of this argument, the

10

defendant submitted affidavits from three individuals recounting their experiences as they approached the court room. Two of the individuals averred that upon seeing an officer at the door, they decided not to enter so as to avoid interaction with law enforcement. The other affiant averred that she entered the court room but was "aware" that a member of the defendant's family was told by an officer that they were not permitted to enter due to an outstanding warrant.[3] Upon reviewing the affidavits, we agree with the motion judge that they merely "establish that officers were checking identification and requiring spectators to sign in before entering the court room." Contrary to the defendant's characterization, the affidavits do not show that the police were "using a list of names and photographs from a law enforcement database to screen court room entrants." Rather, the affidavits, at best, explain why the affiants, upon seeing an officer at the door checking IDs and requiring entrants to sign in, decided not to enter. Cf. Commonwealth v. Andrade, 488 Mass. 522, 542 (2021) ("That some spectators who were unable to produce identification were barred from entry, as the defendant contends, does not change the analysis").

---

[3] The judge properly concluded that the affiant's statement about the alleged exclusion of a family member was inadmissible hearsay. The defendant does not argue otherwise.

11

We conclude that the motion judge acted within her discretion in determining, without an evidentiary hearing, that the conditions neither amounted to a closure nor were imposed in error.[4]  See Commonwealth v. Goodreau, 442 Mass. 341, 348-349 (2004) ("If the theory of the motion [for a new trial], as presented by the papers, is not . . . persuasive, holding an evidentiary hearing . . . will accomplish nothing").[5]

d.  Newly available proposed testimony.  Lastly, the defendant asserts that the motion judge erred in not granting a new trial based on newly available evidence, which purportedly undercuts the "core aspects" of T.S.'s testimony.

"In a motion for a new trial based on new evidence, the defendant must show that the evidence is either 'newly discovered' or 'newly available' and that it 'casts real doubt' on the justice of the defendant's conviction" (footnote

---

[4] Given our conclusion that the affidavits did not give rise to an apparently meritorious claim, we also conclude that the motion judge did not err in denying the defendant's request for postconviction discovery.  See Commonwealth v. Daniels, 445 Mass. 392, 407 (2005) ("In requesting [postconviction] discovery, the defendant must make a sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial").

[5] Because we conclude that there was no error or other abuse of discretion in the trial judge's ruling on the Commonwealth's peremptory challenges or in his imposition of conditions on entry (which did not amount to a closure), we need not opine as to whether the issues were waived as a result of defendant's appellate counsel's failure to raise the same issues on direct appeal.

omitted).  Commonwealth v. Sullivan, 469 Mass. 340, 350 (2014).

"The standard is not whether the verdict would have been

different, but whether the evidence probably would have been a

'real factor' in the jury's deliberations."  Id. at 350-351.

"We will reverse a judge's ruling on appeal only if the decision

is 'manifestly unjust'" (citation omitted).  Id. at 351.

Here, the defendant submitted affidavits from M.L. and M.F.

-- witnesses who asserted their Fifth Amendment privilege at

trial -- that contradict T.S.'s account of the events leading up

to the shooting.[6]  After considering the affidavits, the motion

judge concluded that the proffered testimony did not "cast[]

real doubt on the justice of the conviction" for two reasons:

(1) the proffered testimony would have contradicted T.S.'s

testimony regarding events that occurred solely before the

shooting, therefore leaving T.S.'s identification of the

defendant intact, and (2) this testimony would be cumulative of

evidence already presented at trial.

Based on the record, we discern no error in the motion

judge's conclusion and rationale.  First, because the

---

[6] M.F. -- who pleaded guilty to witness intimidation before trial -- averred that there was no "hang out" at his house prior to the shooting, and that in any event, he was in North Carolina at the time of the shooting.  M.L.'s affidavit stated, contrary to T.S.'s testimony, that he was not present at a gathering at M.F.'s house prior to the shooting, and that he did not drive T.S. to the location of the shooting.

13

prosecution's case relied primarily on T.S.'s identification of the defendant as his shooter -- both moments after the shooting and upon being shown a photo array -- the proffered testimony, while serving an impeachment purpose, only undermines T.S.'s testimony as to collateral events which occurred before the shooting.  Contrast Commonwealth v. Drayton, 479 Mass. 479, 483, 490-491 (2018) (new evidence not only impeached witness but also contradicted testimony that he saw murder and "undermine[d] the Commonwealth's entire case against the defendant").  Furthermore, the proffered testimony treads the same ground as evidence presented by the defendant at trial.  At trial, the defendant introduced records that showed M.L. had checked into a hotel in South Boston on the night of the shooting, and that M.F. had obtained a Greyhound bus ticket to North Carolina several days before the shooting.  Thus, the proffered testimony, providing the witnesses' first-hand accounts of these time frames, "carries less weight than new evidence different in kind."  Commonwealth v. Cintron, 435 Mass. 509, 518 (2001).  See Commonwealth v. McGee, 467 Mass. 141, 150 (2014) ("Newly discovered evidence that tends to merely impeach the testimony of a witness does not ordinarily warrant a new trial" [citation omitted]).

We therefore conclude that the motion judge properly denied the defendant's motion for a new trial based on newly available evidence.

Order denying motion for a
new trial affirmed.

By the Court (Shin, Walsh &
Allen, JJ.[7]),

Clerk

Entered:   March 18, 2026.

---

[7] The panelists are listed in order of seniority.